## STATE OF CONNECTICUT *v.* NANA BONSU
## (AC 17315)

Foti, Spear and Hennessy, Js.

Argued January 13—officially released July 13, 1999

*Raul Davila-Carlos,* for the appellant (defendant).

*Harry Weller,* senior assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Vicki Melchiorre,* senior assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and unlawful restraint in the second degree in violation of General Statutes § 53a-96 (a). He claims that his constitutional right to a fair trial was violated by prosecutorial misconduct that consisted of (1) inquiring into the defendant's misdemeanor criminal record in violation of the trial court's order and (2) urging the jury to draw a negative inference from the defendant's inability to recall the last names of certain persons, in violation of the trial court's prohibition against any "missing witness" argument.[1] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim went on a double date with the victim's best friend and the defendant's roommate. After seeing a movie, the two couples went to the defendant's apartment, where they planned to

---

[1] The defendant also claims that the trial court improperly denied his motion for a new trial. In that motion, the defendant alleged that the trial court improperly admitted evidence that he had been convicted of more than one criminal offense. This issue is subsumed in our resolution of the defendant's other claims; therefore, we will not address it separately.

eat a meal that was to be prepared by the defendant and his roommate.

While the couples were at the apartment, the defendant's roommate and his date retired to a bedroom. The defendant and the victim danced and the defendant started kissing the victim. When the defendant pulled the victim to her knees and tried to unbuckle her belt, she told him to stop because she did not want to have sexual relations with him. The defendant then went to a closet and got a comforter, which he spread on the floor. He asked the victim to lie down next to him and assured her that nothing was going to happen.

Once the victim was on the comforter, the defendant got on top of her, pinned her hands above her head, held her down and sexually assaulted her. After biting the defendant on the lip, the victim was able to free herself and run into the bathroom. The victim came out of the bathroom and knocked on the bedroom door where the other couple was. She told them that she wanted to go home immediately. The defendant apologized to the victim and begged her not to go to the police.

Later that morning, the victim told her friend that the defendant had raped her. She went to the East Hartford police department and thereafter to Hartford Hospital for an examination. The defendant was subsequently convicted, and this appeal followed.

I

The defendant first claims that the prosecuting attorney committed misconduct when she inquired into the defendant's misdemeanor criminal record. The defendant claims a certain "line of questions" violated the trial court's order, particularly, the question regarding "more than one criminal offense," which improperly elicited evidence that the defendant had been convicted of more than one offense. We are unpersuaded.

Certain additional facts are necessary for the resolution of this issue. The trial court granted the defendant's motion in limine to preclude the state from inquiring into the defendant's record of three prior misdemeanor convictions. At the time that the court granted the motion, the court advised the state that it would reconsider the ruling if the defendant opened the door as to his character or if the state could demonstrate that the convictions were otherwise admissible. The court also advised the assistant state's attorney that, if she intended to get into the misdemeanor convictions, she was first to advise the court so that the jury could be excused during argument on the issue.

While cross-examining the defendant, the assistant state's attorney inquired into the defendant's application to become a state licensed security guard. The defendant admitted that he lied in response to the question on the application that asked whether he had ever been convicted of a criminal offense and he also admitted that he had been convicted of a criminal offense in Connecticut. The assistant state's attorney then asked: "You've been convicted of more than one criminal offense in Connecticut?" The trial court sustained an objection to that question. The defendant claims that this line of questioning[2] was a violation of the court's

---

[2] Prior to defense counsel's objection, the following colloquy occurred between the assistant state's attorney and the defendant:

"Q. Sir, does question number seven ask if you've ever been convicted of a criminal offense in this state or elsewhere?

"A. Yes.

"Q. And what did you answer to that?

"A. No.

"Q. And that was not true, was it?

"A. Yes.

"Q. It was true?

"A. No.

"Q. It was not true. You have been convicted of a criminal offense.

"A. Yes.

"Q. In Connecticut?

"A. Yes."

order precluding inquiry into his misdemeanor criminal record.

The state first asserts that the claim is not reviewable because there was no objection to the line of questioning and the claim does not warrant review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[3] because it is not of constitutional magnitude. Even if we conclude that the claim is reviewable, the state asserts that it complied with the court's order because the prosecuting attorney, as instructed, advised the court that it intended to delve into this subject during a sidebar conference. The state also argues that the defendant's failure to raise any objection to the questions after the sidebar conference gives rise to a fair inference that the trial court permitted the state to expose the prior conviction to show that the defendant had previously lied in a sworn statement. The state further asserts that the trial court admitted the evidence as to the issue of credibility and properly instructed the jury that the evidence of the defendant's conviction was to be used only for assessing his credibility. We agree with the state that the claim is unpreserved and we also decline to afford *Golding* review.

---

[3] "In *State* v. *Golding*, [supra, 213 Conn. 239–40], [our Supreme Court] reformulated the standard announced in *State* v. *Evans* [165 Conn. 61, 327 A.2d 576 (1973)], for appellate consideration of constitutional claims that were not preserved at trial. [Our Supreme Court] stated that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . [Our Supreme Court] noted that [it] would remain free to dispose of the claim by focusing on whichever condition is most relevant [in] the particular circumstances." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Atkinson*, 235 Conn. 748, 768 n.26, 670 A.2d 276 (1996).

The state conferred with the trial court prior to asking the challenged questions, as the defendant concedes. There was no objection to the line of questioning until the assistant state's attorney attempted to establish whether there was more than one criminal conviction in Connecticut. The defendant successfully objected to that particular question and never mentioned that line of questioning or moved to strike those answers. We conclude that the claim with respect to those questions is unpreserved and, therefore, we will not review it.[4]

The defendant does not seek review of this issue pursuant to *Golding*. Even if we could conceivably view his claim that the assistant state's attorney's "blatant disregard" of the trial court's order violated the defendant's right to due process as a claim for *Golding* review, such a claim must fail for lack of a factual predicate.

Nothing in the record indicates that the questions, to which no objections were raised, violated the trial court's order. To the contrary, because the questions were put after a sidebar conference that the assistant state's attorney requested, it fairly can be inferred that the assistant state's attorney obtained the court's permission to ask the questions. Although we have no record of the sidebar conference, "[a]bsent any showing by the defendant to the contrary, we must presume the regularity of the proceedings off the record . . . ." *State* v. *Jones*, 193 Conn. 70, 89 n.13, 475 A.2d 1087 (1984).

The defendant claims that the assistant state's attorney committed misconduct in two other respects. First, he claims that the assistant state's attorney's question regarding other convictions in Connecticut was misconduct because it improperly elicited evidence that the

---

[4] Practice Book § 60-5 provides in relevant part that "the court shall not be bound to consider a claim unless it was distinctly raised at the trial. . . ."

defendant was convicted of more than one criminal offense. He also asserts that posing the question violated the trial court's order. We disagree.

There was no answer to the question because of the successful objection. We must presume that the jury followed the trial court's instructions to rely only on the evidence that was presented. Moreover, questions are not evidence. See *State* v. *Lasky*, 43 Conn. App. 619, 635–36, 685 A.2d 336 (1996), cert. denied, 239 Conn. 959, 688 A.2d 328 (1997); see also *In re Michelle G.*, 52 Conn. App. 187, 190, 727 A.2d 226 (1999). There simply is no factual basis for the claim that evidence of more than one conviction was elicited.

Even if we assume, arguendo, that the question violated the trial court's order, such a violation does not rise to the level of misconduct. Initially, we note that this question was a logical extension of the line of questions, to which there were no objections, regarding the defendant's lack of veracity on the employment application. Multiple convictions would tend to negate any claim that the answer on the application, although untrue, was an oversight of one misdemeanor rather than a deliberate untruth. We discern no bad faith by the prosecuting attorney in putting the question to the defendant. Although a showing of good faith is not dispositive, "the absence of bad faith by a prosecutor is to be accorded considerable weight in a given case . . . ." *State* v. *Binet*, 192 Conn. 618, 629, 473 A.2d 1200 (1984).

We conclude that this one instance does not constitute misconduct. Our Supreme Court has given us recent guidance in this area in *State* v. *Satchwell*, 244 Conn. 547, 569, 710 A.2d 1348 (1998). In rejecting a claim of prosecutorial misconduct during closing argument, the court stated: "Under all of the circumstances, therefore, we are satisfied that the challenged remarks

did not adversely affect the defendant's right to a fair trial. Furthermore, the defendant has failed to establish that the state's attorney's comments were so offensive to the judicial process as to require reversal of the defendant's convictions, nor has he demonstrated that the remarks were part of a pattern of prosecutorial misconduct for which a new trial is required." Id. When we apply that analysis here, it is clear that the defendant falls far short of establishing that the challenged question constitutes prosecutorial misconduct.

## II

The defendant also claims that the prosecutor committed misconduct when, contrary to the court's instructions, she argued in summation that the jury should draw a negative inference from the defendant's inability to recall the last names of certain persons.[5] The defendant claims that that violates the trial court's order that neither side could make a "missing witness" or "*Secondino* argument."[6] We agree with the state that

[5] The argument complained of is as follows: "You should also consider that the defendant either couldn't or wouldn't give us the name of the various people he named in his defense. For example, this friend who also took him to church named Frank, I think he told me something to the effect that it was not for him to know what his last name was. Well, do you think maybe he didn't want me to know the last name so that I couldn't find these people and bring them in and testify? Think about that ladies and gentlemen."

[6] "The failure to produce a witness for trial who is available and whom a party would naturally be expected to call warrants an adverse inference instruction against the party who would be expected to call that witness. *State* v. *Santangelo*, 205 Conn. 578, 596, 534 A.2d 1175 (1987); *State* v. *Anderson*, 212 Conn. 31, 41, 561 A.2d 897 (1989). [T]he two requirements for a *Secondino* adverse inference instruction against a party are that the witness: (1) is available; and (2) could reasonably be expected, by his relationship to the party or the issues, to have peculiar or superior information material to the case that, if favorable, the party would produce. *Hines* v. *St. Vincent's Medical Center*, 232 Conn. 632, 641, 657 A.2d 578 (1995) (*Borden, J.,* concurring); *State* v. *Wood*, 208 Conn. 125, 140, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988); *State* v. *Shashaty*, 205 Conn. 39, 43, 529 A.2d 1308 (1987), cert. denied, 484 U.S. 1027, 108 S. Ct.

this claim was waived at trial and *Golding* review is not warranted.

The defendant did not object to the argument with respect to the defendant's being unable to recall certain last names. Moreover, at the close of final arguments, the trial court, sua sponte, instructed the jury to disregard the comments regarding the defendant's failure to remember the last name of an individual whom the defendant had identified only as Frank. After the jury was excused, the defendant's counsel indicated that she was satisfied with the curative instruction regarding the *Secondino* reference.

The defendant attempts to clothe this unpreserved claim in constitutional garb by asserting that his right to a fair trial was violated by the prosecutor's closing argument. "A prosecutor's failure to secure the trial court's permission to refer to missing witnesses, however, fails to reach constitutional magnitude. See *State* v. *Taylor*, 239 Conn. 481, 490, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997)." *State* v. *Clark*, 48 Conn. App. 812, 831, 713 A.2d 834, cert. denied 245 Conn. 921, 717 A.2d 238 (1998).

Although the trial court did prohibit any *Secondino* arguments, we conclude that the remarks in question here did not amount to a violation of the trial court's order. There is no factual basis for the claim because the prosecuting attorney did not ask the jury to draw any adverse inference from the defendant's failure to call any witness; rather the prosecutor commented on

753, 98 L. Ed. 2d 766 (1988); *Secondino* v. *New Haven Gas Co.*, [147 Conn. 672, 165 A.2d 598 (1960)]. The party seeking the adverse inference instruction bears the burden of proving both prongs of the test, and the trial court must make a preliminary determination that there is evidence in the record to support these elements." (Internal quotation marks omitted.) *State* v. *Lewis*, 245 Conn. 779, 813–14, 717 A.2d 1140 (1998).

the state's inability to call the witnesses. A review of the record reveals that the prosecutor's reference to the missing witnesses was not for the purpose of asking the jury to draw an adverse inference. The prosecutor's remarks were made for the purpose of drawing the jury's attention to the defendant's credibility. The state did not argue that the witnesses' testimony would have contradicted that of the defendant, but argued that, contrary to the defendant's testimony, there were no witnesses who could testify. Therefore, the prosecutor's comments were appropriate.

Again, even if we were to view the evidentiary claim that the prosecutor violated the trial court's order under the guise of prosecutorial misconduct, the defendant cannot prevail. "We will not afford *Golding* review to [unpreserved] claims of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial. . . . [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of the argument." (Citation omitted; internal quotation marks omitted.) *State* v. *Rogers*, 50 Conn. App. 467, 477–78, 718 A.2d 985, cert. denied, 247 Conn. 942, 723 A.2d 319 (1998). "[M]oreover . . . [*Golding*] review of such a claim is unavailable where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial . . . ." (Internal quotation marks omitted.) *State* v. *Cox*, 50 Conn. App. 175, 179, 718 A.2d 60, cert. granted on other grounds, 247 Conn. 928, 719 A.2d 1170 (1998).

Here, the argument to the jury, even in conjunction with the question regarding other convictions fails to evince a pattern of egregious conduct.[7] The defendant, in essence, asserts that any violation of a trial court's order by a prosecutor is misconduct, per se, and necessarily violates the defendant's right to a fair trial. To the contrary, "[i]n determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted; internal quotation marks omitted.) *State* v. *Aponte*, 50 Conn. App. 114, 126, 718 A.2d 36, cert. granted on other grounds, 247 Conn 926, 719 A.2d 1169 (1998).

[7] The defendant also claims that the prosecutor was argumentative in her questioning of the defendant and improperly repeated his answers to some questions. The court made a "strong suggestion" that the prosecuting attorney not repeat the defendant's answers and if she disagreed with his answer, "not to demonstrate any revulsion toward those answers. That's best reserved for argument." The defendant asserts that this amounts to egregious conduct, but cites to no authority and offers no legal analysis in support of his contention. We fail to see how this claim involved anything more than the usual give and take of any hotly contested trial. Not infrequently, trial courts are called on to rein in exuberant counsel, but such intervention does not necessarily bespeak misconduct. The defendant does cite *State* v. *Williams*, 204 Conn. 523, 541, 529 A.2d 653 (1987), in support of his claim that the prosecutor improperly expressed her opinion of the victim's credibility by arguing to the jury that she had "yet to see a witness' statement that didn't contain something that we would like to see in there, that something wasn't left out." There was no objection to this statement. We conclude that the statement could fairly be read not as an endorsement of the victim's credibility, but as a general observation that seldom do oral or written statements about events incorporate every single detail of the events. As discussed previously, this would hardly rise to the level of misconduct.

We conclude that the defendant has failed to establish a violation of the trial court's order or prosecutorial misconduct sufficient to trigger *Golding* review. The conduct to which the defendant points is not egregious, nor is a pattern of misconduct evident.

The judgment is affirmed.

In this opinion the other judges concurred.